UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| MELISSA WALLER, | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | MO:23-CV-00121-DC-RCG |
| JET SPECIALTY, INC., | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendant Jet Specialty, Inc.'s ("Defendant" or "Jet") Motion to Dismiss Plaintiff's Second Amended Complaint. (Doc. 30). This case is before the Court through a Standing Order pursuant to 28 U.S.C. § 636 and Appendix C of the Local Court Rules for the Assignment of Duties to United States Magistrate Judges. After due consideration of the parties' briefs and the case law, the Court **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED IN PART and DENIED IN PART**. (Doc. 30).

## I.    BACKGROUND

This is an employment discrimination case. Plaintiff Melissa Waller ("Plaintiff") worked as an oil field delivery driver at Jet Specialty's Midland location from June 2022 to September 2022. (Doc. 27 at 3). Plaintiff alleges she was the only female working at Defendant's Midland location. *Id.* In her Complaint, Plaintiff states that from the beginning of her employment with Defendant, she was subjected to bawdy language about her body, her male coworkers attempted to portray Plaintiff as slow and inefficient in front of their supervisor, and one male coworker "demand[ed] Plaintiff allow him to 'hook up' with her (female) friends." *Id.*

Further, Plaintiff alleges several specific instances that occurred during her employment. On or about August 23, 2022, a male coworker reprimanded and criticized Plaintiff in front of their coworkers for a mistake, which Plaintiff claims the male coworker made. *Id.* at 4.

Following this, Plaintiff complained about this event and the hostile work environment to her supervisor, who brushed off her concerns. *Id*. Plaintiff also alleges that a specific coworker made inappropriate sexual comments and advances. *Id*. The comments included "asking Plaintiff to be his 'friend with benefits,' asking if he could 'tap that ass,' and calling her a 'cougar.'" *Id*. On September 2, 2022, Plaintiff asserts this coworker suggestively asked Plaintiff if she wanted to hang out after hours. *Id*. After Plaintiff had said no, the coworker drove by Plaintiff's place of residence that night and told Plaintiff that he was there. *Id*. at 4–5. The following day, that coworker and others continued to call Plaintiff a "cougar." *Id*. Plaintiff complained about the coworker's actions to her supervisor, whom she asserts "retaliated by taking away her previously given privilege of having a work truck." *Id*. The last incident Plaintiff alleges involves a coworker dropping a heavy load of I-beams, seeing that Plaintiff's hands were not clear of harm. *Id*. Plaintiff again reported this incident to her supervisor, who did not take action. *Id*. at 6.

Following these incidents, because her supervisor ignored her reports, Plaintiff states she called and spoke with a Human Resources employee at Defendant's corporate office "to complain about the hostile work environment, the sexual harassment, and discriminatory treatment by her male coworkers and her supervisor." *Id*. Plaintiff asserts that "[a]s a result of her phone call to Jet Specialty's corporate office, Plaintiff was retaliated against and terminated by her supervisor." *Id*. Specifically, Plaintiff was called into her supervisor's office and told Plaintiff "the position I hired you for just isn't a good fit for you," "you are too slow," and "I don't have another position for you, so I have to let you go." *Id*. Plaintiff explains she believed this was a pretextual reason for termination, and in fact was retaliation, because "Plaintiff never received any complaints from customers written or verbal, about the timeliness of her deliveries." *Id*. Further, Plaintiff alleges she was never disciplined during her employment and

believed she was doing a good job in her position. *Id*. at 6–7. Plaintiff was terminated on September 7, 2022, and was alleged replaced by a male employee one day later. *Id*. at 7.

Plaintiff filed a Charge of Discrimination with the Texas Workforce Commission Civil Rights Division ("TWCCRD") on September 9, 2022. (Docs. 27 at 2; 30 at 17). On May 12, 2023, Plaintiff received a Notice of Right to Sue letter from TWCCRD. (Doc. 27 at 2). Within 90 days, Plaintiff filed her Original Complaint against Defendant. (Doc. 1). Following Defendant's First Partial Motion to Dismiss (Doc. 7), Plaintiff filed an Amended Complaint. (Doc. 8). Defendant then filed another Partial Motion to Dismiss. (Doc. 9). After seeking leave of Court, Plaintiff filed a Second Amended Complaint. (Doc. 27). Plaintiff asserts causes of action for sexual harassment via a hostile work environment and retaliation under Title VII of the Civil Rights Act of 1964 and the Texas Labor Code, as well as a violation of the Equal Pay Act. *Id.*

On May 1, 2024, Defendant filed the instant Motion to Dismiss arguing that Plaintiff fails to state a claim as to each cause of action. (Doc. 30). Plaintiff and Defendant filed their respective Response and Reply timely. (Docs. 32; 35). On October 24, 2024, Plaintiff filed a Stipulation of Dismissal with Prejudice as to her Equal Pay Act claim. (Doc. 43). Consequently, this matter is ready for disposition as to Plaintiff's hostile work environment and retaliation claims.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal–Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain recovery") (internal quotation marks and citations omitted).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

### III.    DISCUSSION

**A.  Plaintiff's Hostile Work Environment Claim Under Title VII and Texas State Law**

In its Motion, Defendant argues Plaintiff's hostile work environment claim under Title VII and the Texas Labor Code should be dismissed. (Doc. 30). Title VII of the Civil Rights Act of 1964 prohibits employers from "discriminating" against any individual with respect to employment "because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Similarly, Chapter 21 of the Texas Labor Code prohibits unlawful discrimination in employment. Under the Texas Labor Code, an "employer commits an unlawful employment practice if because of . . . sex . . . the employer . . . fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment . . . ." TEX. LAB. CODE § 21.051(1). Interpretation of Title VII guides the interpretation of Chapter 21. *Quantum Chem. Corps. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001). Therefore, the same analysis applies to claims under both provisions. *Gutierrez v. Zavala Cnty. Appraisal Dist.*, No. DR-23-CV-00059, 2024 WL 3490079, at *3 (W.D. Tex. May 28, 2024) (citing *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014)).

Hostile work environment is a specific discrimination claim under Title VII. *Hudson v. Lincar, Inc.*, 58 F.4th 222, 229 (5th Cir. 2023). Pursuant to § 2000e-2(a)(1), "[i]t shall be an unlawful employment practice for an employer—(1) . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "The phrase terms, conditions, or privileges of

employment evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted). "When a workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Hudson*, 58 F.4th at 229 (citing *Harris*, 510 U.S. at 21) (internal quotation marks omitted).

"To prove a hostile work environment claim, the plaintiff must prove that she is (1) a member of a protected class who was (2) subject to 'unwelcome harassment' that was (3) based on the plaintiff's status as a member of a protected class (here, sex) and was (4) 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment' and that (5) 'the employer knew or should have known of the harassment in question and failed to take prompt remedial action.'" *Abbt v. City of Houston*, 28 F.4th 601, 607 (5th Cir. 2022) (citing *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)). "For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007). "Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive." *Id.* "Whether an environment is 'hostile' or 'abusive' is determined by looking at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Shepard v. Comptroller of Pub. Accts. of State of Tex.*, 168 F.3d 871, 874 (5th Cir.

1999) (citing *Harris*, 510 U.S. at 23). "Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." *Id.*

Defendant argues dismissal is appropriate because Plaintiff fails to plead elements two through four to establish a prima facie case of gender discrimination based on a hostile work environment theory. (*See* Doc. 30). Further, Defendant states "Waller complains of six comments (none of which were threatening and two had no sexual undertones at all) and two physical encounters (neither of which involved any form of physical contact, and one occurring after working hours off Jet's premises)—the sum of which falls far short of 'severe or pervasive' as to constitute an 'objectively hostile or abusive' workplace." *Id.* at 9.

The Court agrees that Plaintiff failed to sufficiently plead a claim for sexual harassment via a hostile work environment. The facts Plaintiff alleges, even in the light most favorable, do not meet the high burden established by Fifth Circuit precedent. *See, e.g.*, *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003). As Defendant notes, Plaintiff complained of several instances that she subjectively believed to be unwelcome sexual harassment based on her sex. Plaintiff lists specific dates that some of the alleged harassment took place, but otherwise states that the Complaint lists the occurrences in chronological order. (Doc. 32 at 9). The Court infers from Plaintiff's Complaint that between June 2022 and August 22, 2022,[1] Plaintiff's alleged harassment includes being "subjected to bawdy language about her body"; coworkers "attempt[ing] to portray Plaintiff as a slow and inefficient worker in front of their supervisor"; and a coworker "demand[ing] Plaintiff allow him to 'hook up' with her (female) friend." (Doc. 27 at 3). From August 23, 2022, until her termination on September 7, 2022, Plaintiff

---

1. Plaintiff's employment began in June 2022, and the first specific date that Plaintiff alleges an incident of harassment occurred is August 23, 2022. (Doc. 27 at 3–4).

states the harassment included "discussing women, and Plaintiff, in a derogatory way"; a coworker "asking Plaintiff to be his 'friend with benefits,' asking if he could 'tap that ass,' and calling her a 'cougar'"; a coworker asking Plaintiff to hang out after hours, then "driving by Plaintiff's place of residence that same night and telling her he was there"; other coworkers calling Plaintiff a "cougar"; and a "coworker dropp[ing] a heavy load of I-beams, seeing that Plaintiff's hands were not clear of harm." *Id*. at 4–5.

These instances are not sufficiently severe or pervasive to be actionable under Title VII. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted). Furthermore, the Fifth Circuit has held that being subjected to "one subjectively offensive utterance . . . every few days" is not actionable under Title VII when the utterances "were not severe, physically threatening, or humiliating[.]" *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009). Construing the facts in the light most favorable to Plaintiff, it appears that Plaintiff pleads three distinct comments occurring between June and August 22, and pleads, at best, six comments and two physical incidents between August 23 and September 7.[2]

Considering both the content and frequency, the comments do not reach the level of severe or pervasive that the Fifth Circuit has found to alter the work environment, but instead are more akin to "offhand comments" or "mere offensive utterances." *Compare Farpella–Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996) (finding that egregious comments about sexual proclivity made two to three times a week and so frequently "that [Plaintiff] could not possibly remember each instance" created a hostile environment); *and WC&M Enters., Inc.*, 496 F.3d at 400 (reversing the district court's grant of summary judgment because the plaintiff was

---

2. Plaintiff did not quantify the number of comments made or state specific dates each were made.

subjected to verbal harassment based on his race on a regular basis for a period of approximately one year); *and Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396 (5th Cir. 2013) (holding that objectionable conduct approximately twelve times over four days could be seen as pervasive); *with Malin v. Orleans Par. Commc'n Dist.*, 718 F. App'x 264, 273 (5th Cir. 2018) (upholding a 12(b)(6) dismissal because a reasonable person would not believe that a coworker describing her sex life six times was severe or pervasive enough to create an actionable hostile work environment); *and Arredondo v. Schlumberger Ltd.*, 583 F. Supp. 3d 783 (W.D. Tex. 2022) (5th Cir. 2023) (holding seven sexually explicit remakes and several instances of patting Plaintiff's hands and shoulder over a four-week period was not sufficiently severe or pervasive to be actionable under a hostile work environment sexual harassment claim), *aff'd*, 81 F.4th 419.

Similarly, the two alleged physical incidents do not change the analysis. The first incident involved a coworker driving by Plaintiff's place of residence and telling her he was there after Plaintiff "denied his sexual advances." (Doc. 27 at 4–5). The Court agrees with Defendant that the addition of this alleged incident is not enough to say the harassment was pervasive. To the extent that Plaintiff is relying on this single incident to classify the harassment as severe, the Court is not persuaded. "Under the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim as well as a continuous pattern of much less severe incidents of harassment." *WC&M Enters., Inc.*, 496 F.3d at 400. The Court does not consider driving by Plaintiff's house and identifying oneself—with nothing more—as "physically threatening." *Contra Royal*, 736 F.3d at 402 (finding a man, who had previously been in prison, frequently sniffing over a woman's shoulder while she was seated, "can certainly be seen as 'physically threatening'").

Similarly, the Court does not find the second physical incident that Plaintiff describes, involving a coworker dropping a load of I-beams without her hands being clear, meets the elements of a hostile work environment claim. The Complaint is void of any *factual* allegations that this incident was based on Plaintiff's status as a member of a protected class. The Complaint makes clear that Plaintiff believes the coworker was harassing her and threatening "physical injury" "because of her gender and related gender-based reports of harassment to their supervisor about the rampant sexual harassment and hostile work environment." (Doc. 27 at 5). However, Plaintiff fails to plead any facts that allow the Court to infer that this physical incident was related to or based on Plaintiff's sex. Therefore, the Court will not consider it as part of its analysis.

Finally, the alleged harassment did not affect a term, condition, or privilege of Plaintiff's employment. "For harassment on the basis of [sex] to affect a term, condition, or privilege of employment, as required to support a hostile work environment claim under Title VII, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002) (citing *Harris*, 510 U.S. at 21). "A discriminatorily abusive work environment . . . can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Harris*, 510 U.S. at 22. As Defendant points out, Plaintiff alleges that the hostile work environment affected three terms, conditions, or privileges of her employment: (1) Jet took "away her previously-given privilege of having a work truck that she was allowed to take to and from work" (Doc. 27 at 5); (2) Plaintiff was "singled out" (*Id*. at 4) and told by coworkers "the wrong address to drive to" (*Id*. at 7), which caused her "to work

harder than she should have" (*Id.*); and (3) "Plaintiff was put in at least one unsafe physical situation"[3] (Doc. 32 at 8).

Taking Plaintiff's pleadings as a whole, the Court is not persuaded that Plaintiff's employment was sufficiently affected, if at all. Plaintiff's recitation of her success in the workplace undermines her claim that the alleged hostile work environment adversely affected her job performance. *See In re Campbell*, No. 21-cv-0881, 2022 WL 4295260, at *5 (N.D. Tex. Sept. 16, 2022) (holding the alleged harassment did not adversely impact Plaintiff's employment because "he has always received positive performance reviews, has never been formally disciplined, and has consistently advanced up the company's career advancement scale with corresponding pay increases, bonuses, and awards"). Plaintiff explains in the Complaint that "as far as she was aware, [she] was doing a good job in her position, despite her being constantly and aggressively harassed by her male coworkers and discriminated against by her superiors." (Doc. 27 at 7). Although Plaintiff argues that being told the wrong address on one delivery affected her employment by making her untimely, the Complaint states "Plaintiff never received any complaints from customers, written or verbal, about the timeliness of her deliveries." *Id.* at 6. Further, "Plaintiff was never verbally reprimanded, written up, or otherwise disciplined by any of her supervisors at Jet Specialty for being 'too slow,'" and "[i]n fact, Plaintiff was never disciplined for any reason while employed at Jet Specialty." *Id.*

Lastly, the allegations surrounding Plaintiff's work truck being taken away are insufficient to establish that any harassment she suffered affected a term, condition, or privilege. While the Court acknowledges that losing a work truck could establish this element, Plaintiff does not meet her burden here. Plaintiff failed to demonstrate that not having the work truck

---

3. As the Court stated, this physical situation does not meet the elements of a hostile work environment claim, as the pleadings lack any factual allegations that the harassment was based on Plaintiff's sex. Therefore, the Court will not consider it here.

adversely affected her job performance or employment. *See Lewis-Smith v. Baylor Reg. Med. Ctr. at Plano*, No. 20-CV-00027, 2021 WL 1090746, at *6 (W.D. Tex. Mar. 19, 2021) (stating "Plaintiff does not show that she was unable to do her job, that the comments caused her performance to suffer, or that the comments even rose to a level or consistency to make the workplace objectively hostile").  Further, the harassment she was experiencing from her coworkers did not directly result in her losing the work truck. As the Complaint makes clear, Plaintiff was complaining about a coworker's actions to her supervisor, and her "supervisor retaliated by taking away her previously-given privilege of having a work truck." (Doc. 27 at 5); *Contra Blanchard v. Tulane Univ.*, 636 F. Supp. 3d 642, 657 (E.D. La. 2022) (holding Plaintiff's work performance was affected as a result of the hostile work environment when "he was blocked from necessary meetings, stopped receiving information required to support activities for campus partners, removed permissions in a necessary software program, and fed Plaintiff's supervisor incorrect information about his job performance"). Therefore, the Court finds that the harassment was not sufficiently severe or pervasive to alter the conditions of the victim's employment.

The alleged harassment is neither severe nor pervasive because no one incident was objectively abusive or hostile and the majority of the alleged incidents—which took place in Plaintiff's last two weeks of employment—amounted to only an occurrence every few days. While the conduct Plaintiff describes was unwanted and inappropriate for the workplace, taken as a whole, Plaintiff does not sufficiently plead that the conduct created a hostile work environment. Thus, the Court **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED** as to Plaintiff's sexual harassment via a hostile work environment claim under Title VII and the Texas Labor Code. (Doc. 30).

**B. Plaintiff's Retaliation Claim Under Title VII and Texas State Law**

Defendant also seeks dismissal of Plaintiff's retaliation claim under Title VII and Texas state law. *See Gorman*, 753 F.3d at 170 (holding the substantive law governing Title VII and Texas state law retaliation claims is identical). "A plaintiff establishes a prima facie case of retaliation by showing: (1) they engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) there was a causal connection between the participation in the protected activity and the adverse employment decision." *Smith v. McDonough*, SA-22-CV-01383, 2023 WL 5918322, at *6 (W.D. Tex. Sept. 8, 2023) (quoting *LeMaire v. La. Bd. of Transp. & Dev.*, 480 F.3d 383, 388 (5th Cir. 2007)).

In its Motion to Dismiss, Defendant argues that Plaintiff's federal and state retaliation claims should be dismissed with prejudice for lack of engaging in any protected activity. (Doc. 30 at 13). "An employee has engaged in activity protected by Title VII if he has either (1) 'opposed any practice made an unlawful employment practice' by Title VII or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *Parker v. State of La. Dep't of Educ. Special Sch. Dist.*, 323 F. App'x. 321, 329 (5th Cir. 2009) (quoting 42 U.S.C. § 2000e-3(a)). At issue in this case is the opposition clause. "To satisfy th[e] opposition requirement, [Plaintiff] need only show that she had a reasonable belief that the employer was engaged in unlawful employment practices." *Id.* Defendant explains that "Waller relies solely on her report to Jet's human resources department as the protected activity giving rise to her alleged retaliations claim." *Id.* However, Defendant states "the Court should not consider such allegations because it directly contradicts Waller's earlier statement in her TWCCRD intake questionnaire." *Id.*

"When considering a motion to dismiss under Rule 12(b)(6), the Court's review is limited to the complaint; any documents attached to the complaint; any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint; and matters subject to judicial notice under Federal Rule of Evidence 201." *Doe v. Univ. of Tex. M.D. Anderson Cancer Ctr.*, 653 F. Supp. 3d 359, 370 (S.D. Tex. 2023) (citing *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir. 2022); *George v. SI Grp., Inc.*, 36 F.4th 611, 619 (5th Cir. 2022)). If the plaintiff's allegations are contradicted by facts disclosed by a document attached to the complaint or by facts disclosed by a document attached to the motion to dismiss that are central to the claim and referenced by the complaint, then the plaintiff's contradicted allegations are not accepted as true. *Id.* (citing *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013) (refusing to accept as true factual allegations that were contradicted by the plaintiff's EEOC charging documents, which the defendant had attached to its motion to dismiss)).

Because the TWCCRD intake questionnaire is attached to the Motion to Dismiss (Doc. 30 at 17–18), it is central to the claim, and it is referenced in the Complaint (Doc. 27 at 2), the Court must consider it in deciding the instant Motion. *See Doe*, 653 F. Supp. 3d at 370. Defendant's Motion points out there is a contradiction as to whether Plaintiff contacted and/or filed a complaint with Jet's Human Resources Department. (Doc. 30 at 12–13). In Plaintiff's TWCCRD questionnaire, under the section asking to explain why you believe the employment harms or actions were discriminatory, Plaintiff writes, "First of all, I wasn't given a chance to report it to HR." *Id.* at 18. However, Plaintiff's Second Amended Complaint states,

> Since Plaintiff's supervisor ignored Plaintiff's complaints, Plaintiff called and spoke with an employee of Human Resources at the corporate office of Jet Specialty to complain about the hostile work environment, the sexual harassment, and discriminatory treatment by her male coworkers and her supervisor. Despite

her complaint to Human Resources department, nothing was done to correct or address the situation at the Midland location where Plaintiff worked.[4]

(Doc. 27 at 6).

Given the clear contradiction between Plaintiff's TWWCRD questionnaire and the Complaint, coupled with the fact that Plaintiff did not address this discrepancy in her Response (*See* Doc. 32), the Court is inclined to not accept the allegations regarding Plaintiff's call to Jet's Human Resources Department as true. *See Doe*, 653 F. Supp. 3d at 370. However, the Court disagrees with Defendant's argument that Plaintiff's complaint to Human Resources is her sole alleged protected activity. (*See* Doc. 30 at 12). Both Plaintiff's Complaint and Response rely on three reports Plaintiff made to her supervisor as a protected activity. (Docs. 27 at 9; 32 at 9).

Plaintiff states her first complaint to her supervisor followed an incident on August 23, 2022, where "Plaintiff was unduly degraded and humiliated when [a coworker] reprimanded and criticized her—for a mistake [the coworker] himself made—in front of Waller's coworkers." (Doc. 27 at 4). Plaintiff further explains that her male co-workers never communicated with or about each other this way and "the only difference between Plaintiff and Plaintiff's coworkers was Plaintiff's gender," so "Plaintiff complained about the foregoing events and hostile work environment to her supervisor." *Id.* Plaintiff's second complaint to her supervisor related to a coworker calling her a "cougar," "taunt[ing] Plaintiff in a sexual manner," and driving by her house one night and telling Plaintiff he was there. *Id.* at 4–5. Plaintiff's final complaint was regarding another coworker's actions. *Id.* at 5–6. Plaintiff speculates that the coworker "continued his harassment of [P]laintiff by putting Plaintiff in harm's way because of her gender

---

4. Plaintiff was terminated from Jet Specialty, Inc. on September 7, 2022. (Doc. 30 at 18). The TWCCRD questionnaire was filed on September 9, 2022. *Id.* at 17. The Second Amended Complaint does not state when Plaintiff made the call and complained to Jet's Human Resources Department; however, it is clear Plaintiff is alleging the call occurred before she was terminated. (*See* Doc. 27 at 6). The Court infers from the timeline that the Human Resources call, as alleged in the Complaint, would have been made prior to Plaintiff filling out the TWCCRD form.

and related gender-based reports of harassment to their supervisor about the rampant sexual harassment and hostile work environment. Specifically, the threat of Plaintiff's physical injury was real when this coworker dropped a heavy load of I-beams, seeing that Plaintiff's hands were not clear of harm." *Id.* at 5. Plaintiff states that she reported this coworker's actions to her supervisor. *Id.* at 6.

The issue is whether Plaintiff's complaints to her supervisor constitute a protected activity. The Court must address whether the content of Plaintiff's complaints to her supervisor is sufficient to constitute a protected activity, as well as whether Plaintiff alleged a reasonable belief that the actions by her employer were in violation of Title VII.

First, Plaintiff pleaded sufficient facts regarding the complaints to her supervisor allowing the Court to reasonably infer she engaged in a protected activity under Title VII. In opposing unlawful practices, "[m]agic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." *Brown v. UPS*, 406 F. App'x 837, 840 (5th Cir. 2010) (citations omitted). Moreover, "[c]omplaining about unfair treatment without specifying why the treatment is unfair . . . is not a protected activity." *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008). "An employee's complaint to her employer that is vague, 'without any reference to an unlawful employment practice under Title VII, does not constitute protected activity.'" *Jenkins v. La. Workforce Comm'n*, 713 F. App'x. 242, 246 (5th Cir. 2017) (quoting *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x. 485, 493 (5th Cir. 2011)). In *Moore v. United Parcel Service, Inc.*, 150 F. App'x. 315 (5th Cir. 2005), for example, the Fifth Circuit held that a delivery driver's grievance—alleging that the company violated the union agreement when it fired him—was not a protected activity under Title VII. *Id.* at 319. The court reasoned that the driver was not

engaged in a protected activity because the grievance "made no mention of race discrimination." *Id.*

Here, Plaintiff's complaints to her supervisor, albeit informal, constitute engaging in a protected activity. *Tureaud v. Grambling State Univ.*, 294 F. App'x. 909, 914 (5th Cir. 2008) ("An informal complaint to a supervisor regarding an unlawful employment practice may satisfy the opposition requirement of a Title VII retaliation claim."). Plaintiff alleges that, on three occasions between August 23, 2022, and September 7, 2022, she reported to her supervisor "the gender discrimination via sexual harassment she suffered while working for the company." (Doc. 27 at 9); *see McCorvey v. Univ. of Tex. Health Sci. Ctr. at San Antonio*, No. 16-CV-631, 2016 WL 8904949, at *9 (W.D. Tex. Dec. 21, 2016) (finding the plaintiff alleging "that, on at least three occasions between November 2014 and January 2015, she reported to her supervisors that she had been experiencing disparate treatment on the basis of her race because of her previous wage discrimination complaint" was sufficient to support a retaliation claim). Specifically, after the first incident, Plaintiff states she "complained about the foregoing events and hostile work environment to her supervisor." (Doc. 27 at 4). As Plaintiff alleges, the complaints to her supervisor reference unlawful employment practices and are sufficient to alert her employer of such.

Second, Plaintiff has sufficiently alleged a reasonable belief that she had a hostile work environment claim based on her sex. In a retaliation claim, "Plaintiff is only required to show that she had a reasonable belief that the actions by her employer constituted a violation of Title VII when she engaged in the protected conduct of reporting it." *McCorvey*, 2016 WL 8904949, at *8; *Parker*, 323 F. App'x at 329 (holding "a plaintiff can establish a prima facie case of retaliatory discharge under the opposition clause of section 704(a) if he shows that he had a

reasonable belief that the employer was engaged in unlawful employment practices"). "It has long been the law in [the Fifth Circuit] and other circuits that a plaintiff contending that she was retaliated against for proactively reporting employment discrimination need not show that the discrimination rose to the level of a Title VII violation, but must at least show a reasonable belief that it did." *Id.* (quoting *E.E.O.C. v. Rite Way Serv.*, 819 F.3d 235, 237–38 (5th Cir. 2016)).

Despite dismissing Plaintiff's hostile work environment claim, the Court finds that Plaintiff sufficiently alleged a reasonable belief that her employer's actions were in violation of Title VII. "[T]he reasonable belief standard recognizes there is some zone of conduct that falls short of an actual violation but could be reasonably perceived to violate Title VII." *Rite Way Serv.*, 819 F.3d at 242. The Fifth Circuit demonstrated the existence of this gray area between actual violation and perceived violation in cases where the court "affirmed summary judgment on an employee's discrimination claim while simultaneously reversing summary judgment on his or her opposition clause claim." *Id.* (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 305–09 (5th Cir.1996); *Parker*, 323 F. App'x at 329–30). In determining what constitutes a reasonable belief that a Title VII violation has occurred, the Fifth Circuit has emphasized the importance of the "severity" and frequency" of the alleged conduct. *Compare Taliaferro v. Lone Star Implementation & Elec. Corp.*, 693 F. App'x 307, 310 (5th Cir. 2017) (holding an employee could not reasonably have believed that a single text message exchange constituted an unlawful employment practice), *with Rite Way Serv.*, 819 F.3d at 243–44 (holding the plaintiff could have reasonably believed an unlawful employment practice occurred because she witnessed two troubling incidents and the Project Manager discouraged her from corroborating her co-workers allegations).

Here, the Court finds that Plaintiff could reasonably believe she was being subjected to a hostile work environment. Several sexually suggestive comments were made directly and exclusively to Plaintiff, who was the only female employed at Defendant's Midland location. While the comments and actions of her coworkers did not rise to the requisite level of severe and pervasive, the Fifth Circuit has explained, "[w]e do not require an employee to be 'an expert' in Title VII law." *Cuellar v. Sw. Gen. Emergency Physicians, P.L.L.C.*, 656 F. App'x 707, 710 (5th Cir. 2016). Therefore, Plaintiff pled sufficient facts showing she engaged in a protected activity because she made reports to her supervisor about conduct that she reasonably believed was protected under Title VII.

The second element Plaintiff must allege to establish a claim for retaliation is that an adverse employment action occurred. *LeMaire*, 480 F.3d at 388. This element is clear as the parties do not dispute that Plaintiff was terminated from Jet on September 7, 2022 (Doc. 30 at 18), which is a materially adverse employment action. *Cuellar*, 656 F. App'x at 709.

Finally, Plaintiff must show there was a causal connection between the participation in the protected activity and the adverse employment decision. *LeMaire*, 480 F.3d at 388. "At the prima facie stage, 'the standard for satisfying the causation element is 'much less stringent' than a 'but for' causation standard.' Nevertheless, the plaintiff must produce some evidence of a causal link between the protected activity and the adverse employment action to establish a prima facie case of retaliation." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001)). "[C]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

While Plaintiff's Second Amended Complaint does not allege the exact date she made each complaint to her supervisor, the Court infers an approximate timeline from the facts pleaded. Plaintiff alleges the incident that formed the basis for her first complaint to her supervisor happened on or about August 23, 2022. (Doc. 27 at 4). It is undisputed that Plaintiff was fired on September 7, 2022 (Doc. 30 at 18). Therefore, the Court infers that each complaint—which constitutes Plaintiff's protected activity—occurred in that 15-day period. The close timing here establishes the requisite causal connection. *See Aguillard v. La. Coll.*, 824 F. Appx. 248, 251 (5th Cir. 2020) (holding "[w]hile a four-month gap may be sufficient evidence of causation, a five-month gap is too long absent other evidence); *Jasso v. Midland-Odessa Transit Mgmt, Inc.*, No. 22-CV-00250, 2023 WL 6474435, at *3 (W.D. Tex. Sept. 19, 2023) (inferring a causal connection because only ten days separate the plaintiff's complaint and her firing).

Plaintiff sufficiently pleads she engaged in a protected activity, an adverse employment action occurred, and there was a causal connection between the protected activity and the adverse employment action. *LeMaire*, 480 F.3d at 388. Thus, the Court **RECOMMENDS** that Defendant's Motion to Dismiss be **DENIED** as to Plaintiff's retaliation claim under Title VII and Texas state law. (Doc. 30).

## IV.    RECOMMENDATION

Based on the circumstances present in this case, the Court **RECOMMENDS** that Defendant's Motion to Dismiss be **GRANTED** as to Plaintiff's cause of action for hostile work environment and **DENIED** as to Plaintiff's cause of action for retaliation. (Doc. 30).

SIGNED this 19th day of November, 2024.

_____
RONALD C. GRIFFIN
UNITED STATES MAGISTRATE JUDGE

20

**INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT**

In the event that a party *has not been served* by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation by certified mail. Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Judge need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the District Judge. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).